## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ZACHARIAH A. FOWLER,

     Plaintiff,

v.

BRAVO FOODS, LLC, *individually and d/b/a* TACO BELL OF AMERICA, and JENNIFER MCCARTHY,

     Defendants,

———————————————————————

CASE NO.

*Plaintiff Demands a Trial by Jury*

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Zachariah A. Fowler (hereinafter referred to as "**Plaintiff**" and/or "**Fowler**"), by and through his counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant Bravo Foods, LLC, *individually and d/b/a* "Taco Bell of America" (hereinafter referred to as "**Taco Bell**"),  and Defendant Jennifer McCarthy (hereinafter referred to as "**McCarthy**"), and alleges as follows:

## INTRODUCTION

1.    This employment discrimination case is about an employer who subjected its black, African American homosexual employee to relentless harassment, discrimination and retaliation.

1

2.      Plaintiff Zachariah A. Fowler brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*  ("**Title VII**") and 42 U.S.C. § 1981 ("**1981**").

3.      Mr. Fowler seeks monetary relief to redress the Defendants unlawful employment practices in violation of Title VII and Section 1981.  Additionally, this action seeks to redress Defendants deprivation of Mr. Fowler's personal dignity and his civil right to pursue equal employment opportunities.

4.      The Defendants unrelenting discrimination and harassment against the Plaintiff culminated with his unlawful termination.

5.      At bottom, the Defendants are jointly and/or severally liable for subjecting Mr. Fowler to a work environment infested with relentless gender/sex discrimination and for wrongfully terminating the Plaintiff because of his gender/sex as well as in complaints of unlawful conduct by the Defendants.

## **PARTIES**

6.      At all material times, the Plaintiff Zachariah A. Fowler (hereinafter referred to as "Plaintiff" or "Mr. Fowler") is a black, African American homosexual male. The Plaintiff Mr. Fowler previously resided in the State of Florida and now resides in the State of New York.

7.      At all times material, the Defendant BRAVO FOODS, LLC, was and is a Foreign Limited Liability Company authorized to do business in the State of Florida.

8.     At all times material, the Defendant BRAVO FOODS, LLC, did and continues to do business as "TACO BELL OF AMERICA" (hereinafter referred to as "Taco Bell").

9.     At all times Material, the Defendant Taco Bell operates a store front at 1860 FL-44, New Smyrna Beach, Florida 32168 (hereinafter referred to as the "New Smyrna Beach Location").

10.    At all relevant times, the Defendant Taco Bell has been continuously doing business in the State of Florida and the City of New Smyrna Beach and have continuously held at least 15 employees throughout all relevant calendar years.

11.    At all times material hereto, DEFENDANT JENNIFER MCCARTHY (hereinafter referred to as "McCarthy") was Mr. Fowler's manager. McCarthy held supervisory authority over Mr. Fowler, including the power to hire, fire and/or demote/promote Mr. Fowler.

12.    The Defendant McCarthy is a resident of the State of Florida.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and 42 U.S.C. § 1981.

14.    Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Orlando Division. The Defendant Taco Bell's business was located in this judicial district and

a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. The Plaintiff was employed by the Defendant Taco Bell within New Smyrna Beach, Florida, located in Volusia County, Florida.

## ADMINISTRATIVE PREREQUISITES

15.    The Plaintiff has complied with all statutory prerequisites to file this action.

16.    On or about May 19, 2020, the Plaintiff dual-filed his charge for discrimination with the Equal Employment Opportunity Commission ("**EEOC**") and the Florida Commission on Human Relations ("**FCHR**") against the Defendant Taco Bell alleging the facts as set forth herein.

17.    In accordance with and pursuant to the existing workshare agreement between the two agencies, an FCHR filing automatically operates as a dual EEOC filing.

18.    On or about March 15, 2021, the EEOC issued the Plaintiff a Right to Sue Letter.

19.    This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

20.    This action is being commenced more than (180) days since the inception of the Plaintiff's administrative action against the Defendant Taco Bell.

## STATEMENT OF MATERIAL FACTS

21.     In or around November 3, 2017, Taco Bell hired Mr. Fowler as a "Crew Member" at their New Smyrna Beach location.

22.     Mr. Fowler was nineteen years old when he began his employment with Taco Bell.

23.     During Mr. Fowler's first week of employment, while he was still training, McCarthy pulled Mr. Fowler aside to inquire if he was gay. Mr. Fowler responded that he was not comfortable discussing that topic because he did not really know McCarthy well. Despite his clear discomfort with being interrogated about his sexuality, McCarthy persisted and continued questioning Mr. Fowler about his sexual preferences.

24.     Throughout Mr. Fowler's course of employment, McCarthy routinely referred to Mr. Fowler by derogatory terms, including but not limited to: "**FAGGOT**", "**BLACK GAY**", "**BLACK FAGGOT**", and "**SISSY**". McCarthy also told Mr. Fowler: "**NIGGA I WILL FUCK YOU UP**".

25.     Mr. Fowler confided in his coworker NOAH (last unknown, hereinafter referred to as "Noah"), who told Mr. Fowler to not worry about the derogatory remarks because McCarthy is likely to terminate Mr. Fowler if he complained about McCarthy's racial and gender/sexual orientation-based slurs.

26.     The day after McCarthy began to make unlawful and unwanted comments to Mr. Fowler, Mr. Fowler received a call from the Defendant's General

Manager, CHRISTINE (last name unknown by Plaintiff, referred to as "Ms. Kirk" by the Defendant, hereinafter referred to as "Christine").

27.     Christine began the phone call by referring to Mr. Fowler as "Zachariah", Mr. Fowler corrected her by politely stating that he prefers to be called "Zach". To his surprise, Christine responded by saying that she likes Zach better because that was the name of her "**BLACK EX WHO HAD A BIG DICK**". Despite his concerns regarding her professionalism, Mr. Fowler complained to Christine of McCarthy's unlawful and discriminatory conduct and comments about his sexuality and race. Christine claimed that she would handle it and apologized, but Christine never handled it.

28.     Rather than indicate her dismay or efforts to quell the harassment, Christine proceeded to ask Mr. Fowler if he was gay. Again, Mr. Fowler responded that he did not feel comfortable discussing that topic and insisted that his sexuality was not the point. Rather, she should be focused on ending the harassment.

29.     Despite his complaints, Defendant failed to timely investigate and correct the unlawful conduct and comments. As a result, the hostility only worsened.

30.     In or around December 2017, McCarthy looked up Mr. Fowler's social media (Facebook) account, where she discovered that Mr. Fowler had been in a relationship with another man. Mr. Fowler was intentionally not friends with others at work because he wanted to keep his personal life private, especially in light of the questions already being asked, but McCarthy took it upon herself to tell not only investigate Mr. Fowler but to take the harassment further, publicly outing him at work

and commenting on his prior relationships to all of his colleagues. Mr. Fowler was humiliated by her actions, becoming only more fearful that she would further escalate.

31.     Following McCarthy's "gossiping" about Mr. Fowler's sexual preferences and relationship with another man, other employees at Taco Bell began harassing Mr. Fowler and called him many derogatory terms for homosexuals. Ms. McCarthy's actions and Defendant Taco Bell's inactions made it clear that bigotry and misconduct was condoned if not   outright encouraged by Defendant Taco Bell's management team.

32.     In or around February 2018, Mr. Fowler tried again to formalize a complaint with Christine. Mr. Fowler openly cried as he told Christine about McCarthy's conduct and how the other employees are reacting by harassing and discriminating against him. Instead of handling the situation appropriately, Christine told Mr. Fowler that he would "have to deal with it or he could quit."

33.     Despite the unrelenting nature of the harassment and the clear toll it was taking on Mr. Fowler, Defendant Taco bell failed to investigate, failed to take corrective action and left Mr. Fowler to fend for himself.

34.     At that point, the Defendant Taco Bell attempted to dissuade Mr. Fowler and promised Mr. Fowler a full-time position and a raise, so he resigned from his second job in reliance on that promise.

35.     Mr. Fowler never received the raise of full-time employment, and as sa result of his diminished earning capacity he became homeless. McCarthy convinced

Mr. Fowler to stay at her house and took the last of his remaining money for a deposit. Mr. Fowler reluctantly agreed as he believed he had no other alternative.

36. On or around June 15, 2018, while Mr. Fowler was at work, Mr. Fowler's coworker, True (last name unknown), stuck her hands down Mr. Fowler's pants and grabbed his penis. Mr. Fowler pulled away and immediately told Christine who responded: "**It's what [True] does, now get back inside and do your job, or do you want to be fired and live on the streets… HOMELESS MEN LOVE GAY BLACK MEN**!" Mr. Fowler did as he was instructed and went back to work as he was in fear of losing his job.

37. A few hours later, Christine asked Mr. Fowler to come over to her, which he did. McCarthy proceeded to grab Mr. Fowler's hands and put them on her person as she stated: "If Jannel knows any of this, I will tell her that you touched me as well."

38. At all times material hereto, JANNEL FIGUEROA (hereinafter referred to as "Figueroa") was the Area Code Manager for the Defendant.

39. As it was clear Christine had no intent to prevent the ongoing harassment from continuing to escalate, Mr. Fowler sought out and complained to Ms. Figueroa about the inappropriate and unlawful conduct taking place.

40. Mr. Fowler explained the steps he had taken to prevent the ongoing harassment and related escalation by his colleagues to which Figueroa responded: "I can't believe what you are saying and if what you are saying is true, then all parties involved will be fired on the spot."

41.     Thereafter, Figueroa and McCarthy went into the office and remained in the office for approximately two hours. Mr. Fowler finally felt he had an ally and was hopeful he would be able to continue to work without the unrelenting pressure of harassment by his supervisor.

42.     When they finally emerged, Mr. Fowler's presence was requested in the office. Rather than addressing the unlawful and discriminatory conduct, Figueroa told Mr. Fowler that since there was no physical proof of the allegations, none of Mr. Fowler's allegations could be true. Mr. Fowler then asked Figueroa to check the cameras, but Figueroa claimed that the cameras did not work.

43.     Defendant Taco Bell refused to take any active steps to investigate the ongoing harassment and failed to take corrective action.

44.     In fact, Defendant Taco Bell took steps demonstrating their continued efforts to condone the illegal conduct and comments. Shortly after the above-mentioned discussion with Figueroa, McCarthy was promoted.

45.     Emboldened by her new promotion, McCarthy told Mr. Fowler to come speak to her in her office. McCarthy then threatened Mr. Fowler, insisting that he needs to stop going over her head and to instead, talk to her about any issues. Further, McCarthy admitted she had in fact been acting in an unlawful manner towards Mr. Fowler. She proceeded to justify her conduct, stating that she "**treats [Mr. Fowler] like shit because [Mr. Fowler] is insubordinate, which is what gives her the right**

to call [Mr. Fowler] a 'BLACK FAGGOT' and say things such as 'NIGGA I WILL FUCK YOU UP.'"

46.     McCarthy followed her threats by asking Mr. Fowler whether he likes to be called a "**BLACK FAGGOT**", to which Mr. Fowler responded, "absolutely not". McCarthy then called Mr. Fowler a "**BLACK FAGGOT**" once again, and told Mr. Fowler that because she is black, she can call him "**NIGGA**" and "**NIGGER**" as she pleases. She closed the conversation by threating Mr. Fowler: "**BLACK FAGGOT, I WILL HANG YOU LIKE THEY DID US**" (referring to the historical lynching of African Americans).

47.     Mr. Fowler was horrified by the comments and became increasingly concerned for his safety when around Ms. McCarthy.

48.     Throughout the course of Mr. Fowler's employment with the Defendant, employees would grab Mr. Fowler and push him into the bathroom, where employees would throw Mr. Fowler up against a wall and say derogatory comments toward him. Despite Mr. Fowler screaming for help, no one ever assisted him.

49.     By means of example and not meant to be an exhaustive list, Mr. Fowler's colleagues would make derogatory comments including but were not limited to: "**DIRTY ASS NIGGA**", "**FUCK BOY**", and "**THIRSTY ASS THROAT.**"

50.     On another occasion, one of the co-workers who pushed Mr. Fowler against the wall asked Mr. Fowler to cover for him while that co-worker went to purchase drugs. Mr. Fowler told the co-worker that he should not be doing drugs at

work, to which the co-worker responded: "**DO WHAT I SAY NIGGER OR I'LL MAKE SURE JENN [referring to McCarthy] KNOWS ABOUT THIS AND YOU KNOW WHAT WILL HAPPEN IF I TELL HER.**" Throughout that night the co-worker repeatedly called Mr. Fowler derogatory terms including, but not limited to: "**NIGGER**", "**NIGGA**", and "**FAGGOT**".

51.     Similarly, another one of Mr. Fowler's co-workers also pushed Mr. Fowler against a wall and forcefully put lipstick on him.

52.     Once again Mr. Fowler informed Figueroa of the discriminatory and unlawful conduct, but Mr. Fowler was told that he needed to complain to McCarthy or Christine instead of Figueroa and put these allegations in a complaint. Further, Figueroa told Mr. Fowler not to call her phone anymore.

53.     Mr. Fowler left Figueroa multiple messages about what was occurring, but she did not respond to any of the messages and failed to do anything about the unlawful and discriminatory conduct.

54.     In or around February 2018, Mr. Fowler finished his responsibilities for the day and asked McCarthy if he could go outside to get some air and take a breath. McCarthy responded, "**HELL KNOW I WANT YOU TO CLOCK OUT AND GO HOME, I DON'T WANT ANY FAGGOT AROUND ME WITH NOTHING TO DO.**" Mr. Fowler explained that his work was done and asked McCarthy if he could clock out. McCarthy then yelled at Mr. Fowler "**NO I DON'T WANT YOU TO**

**CLOCK OUT AND GO HOME. DO WHAT I SAY, OR I WILL WRITE YOU UP FOR BEING INSUBORDINATE!**"

55.     Mr. Fowler received conflicting messages from McCarthy but had finished his work for the day, so he clocked out and went home. On his way home, Mr. Fowler received a text message from McCarthy telling Mr. Fowler not to return to work, per the instruction of Figueroa. Mr. Fowler tried several times to contact Figueroa, but she never answered or responded.

56.     Even after being asked to not return to work, Mr. Fowler received several harassing and discriminatory text messages from McCarthy and others employed by the Defendant Taco Bell.

57.     In or around February 2020, Defendants unlawfully terminated Mr. Fowler because of his race, color and sexual orientation. Defendants further unlawfully terminated Mr. fowler because of his ongoing complaints and opposition to the unlawful conduct by Defendants.

58.     The Defendants harassment and discriminatory conduct was of a continual nature.

59.     At all relevant times, Mr. Fowler was and continued to be qualified for the position he held and maintained with the Defendant Taco Bell.

60.     The aforementioned allegations are just some of the examples of the discrimination and retaliation Mr. Fowler suffered at the hands of the Defendants and are not an exhaustive list of Mr. Fowler's experiences of discrimination and harassment while employed with Defendants.

61.    Mr. Fowler believes he has been discriminated and retaliated against in violation of Title VII and Section 1981.

62.    Additionally, Mr. Fowler further claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine. The Defendants have exhibited a pattern and practice of unlawful discriminatory conduct.

63.    As a result of the Defendants' conduct and actions, Mr. Fowler has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails.  Mr. Fowler has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

64.    Further, as a result of the Defendants' unlawful employment practices, Mr. Fowler felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.   In fact, Mr. Fowler was so emotionally impacted by the Defendants' conduct that he attempted suicide and has attended intensive therapy due to these incidents.

65.    As Defendants' conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Mr. Fowler seeks punitive damages, jointly and/or severally against the Defendants.  Mr. Fowler has presented factual allegations that would permit any reasonable jury to award damages.

66.    At bottom, the Defendants are liable for their reckless disregard for Mr. Fowler's personal dignity and his civil right to pursue equal employment opportunity.

67.     Mr. Fowler has suffered damages as a result of the Defendants' unlawful employment practices.

## COUNT ONE

### Cause of Action for Discrimination Under Title VII for Disparate Treatment Based (As to Defendant Taco Bell Only)

68.     Plaintiff reincorporates the allegations in the previous paragraphs 21-67.

69.     The Defendant Taco Bell is prohibited under the Title VII from discriminating against the Plaintiff because of his sex/gender, race/national origin, in addition to his sexual orientation with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

70.     Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*:

"(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

71.     The Defendant Taco Bell engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against the Plaintiff because of his sex/gender, race/national origin in addition to his sexual orientation.

72.     At all times relevant, the Defendant Taco Bell, by and through its employees, intended to unlawfully discriminate against the Plaintiff Mr. Fowler in the terms and conditions of his employment because of his gender/sex, race/national origin and sexual orientation, and the Defendant Taco Bell did unlawfully discriminate against the Plaintiff Mr. Fowler in the terms and privileges of his

employment because of his gender/sex, race/national origin and sexual orientation in violation of the Title VII.

73.     The discriminatory and disparate treatment of the Plaintiff included, but was not limited to, unlawfully terminating the Plaintiff because of his gender/sex, race/national origin and sexual orientation.

74.     The discriminatory actions of the Defendant Taco Bell against the Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting the Plaintiff to adverse employment action, the Defendant intentionally discriminated against the Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

75.     During Mr. Fowler's first week of employment, while he was still training, McCarthy pulled Mr. Fowler aside to inquire if he was gay. Mr. Fowler responded that he was not comfortable discussing that topic because he did not really know McCarthy well. Despite his clear discomfort with being interrogated about his sexuality, McCarthy persisted and continued questioning Mr. Fowler about his sexual preferences.

76.     In or around early 2018 the Defendant Taco Bell attempted to dissuade Mr. Fowler and promised Mr. Fowler a full-time position and a raise, so he resigned from his second job in reliance on that promise.

77.     Mr. Fowler never received the raise of full-time employment, and as a result of his diminished earning capacity he became homeless. McCarthy convinced

Mr. Fowler to stay at her house and took the last of his remaining money for a deposit. Mr. Fowler reluctantly agreed as he believed he had no other alternative.

78.     On or around June 15, 2018, while Mr. Fowler was at work, Mr. Fowler's coworker, True (last name unknown), stuck her hands down Mr. Fowler's pants and grabbed his penis. Mr. Fowler pulled away and immediately told Christine who responded: "**It's what [True] does, now get back inside and do your job, or do you want to be fired and live on the streets… HOMELESS MEN LOVE GAY BLACK MEN**!" Mr. Fowler did as he was instructed and went back to work as he was in fear of losing his job.

79.     A few hours later, Christine asked Mr. Fowler to come over to her, which he did. McCarthy proceeded to grab Mr. Fowler's hands and put them on her person as she stated: "If Jannel knows any of this, I will tell her that you touched me as well."

80.     In or around February 2018, Mr. Fowler finished his responsibilities for the day and asked McCarthy if he could go outside to get some air and take a breath. McCarthy responded, "**HELL KNOW I WANT YOU TO CLOCK OUT AND GO HOME, I DON'T WANT ANY FAGGOT AROUND ME WITH NOTHING TO DO**." Mr. Fowler explained that his work was done and asked McCarthy if he could clock out. McCarthy then yelled at Mr. Fowler "**NO I DON'T WANT YOU TO CLOCK OUT AND GO HOME. DO WHAT I SAY, OR I WILL WRITE YOU UP FOR BEING INSUBORDINATE!**"

81.   Mr. Fowler received conflicting messages from McCarthy but had finished his work for the day, so he clocked out and went home. On his way home, Mr. Fowler received a text message from McCarthy telling Mr. Fowler not to return to work, per the instruction of Figueroa. Mr. Fowler tried several times to contact Figueroa, but she never answered or responded.

82.   In or around February 2020, Defendants unlawfully terminated Mr. Fowler because of his race, color and sexual orientation. Defendants further unlawfully terminated Mr. fowler because of his ongoing complaints and opposition to the unlawful conduct by Defendants.

83.   The Defendant Taco Bell violated the Title VII by unlawfully discharging and discriminating against the Plaintiff based his sex/gender, race/national origin and sexual orientation, of which the Defendant was fully aware.

84.   As a direct and proximate result of the Defendant Taco Bell's intentional discriminatory conduct in violation of Title VII, the Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  The Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  The Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

85.    The Defendant Taco Bell's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

86.    The conduct of the Defendant Taco Bell and/or its agents deprived the Plaintiff of his statutory rights guaranteed under Title VII.

87.    The Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT TWO
### *Cause of Action for Discrimination Under Title VII for Hostile Work Environment (As to Defendant Taco Bell Only)*

88.    Plaintiff reincorporates the allegations in the previous paragraphs 21-67.

89.    The Defendant Taco Bell is prohibited under the Title VII from discriminating against the Plaintiff because of his sex/gender, race/national origin, in addition to his sexual orientation with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

90.    Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*:

> "(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

91.    The Defendant Taco Bell engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting the Plaintiff to a hostile work environment based solely on his sex/gender, race/national origin, in addition to his sexual orientation.

92.     During Mr. Fowler's first week of employment, while he was still training, McCarthy pulled Mr. Fowler aside to inquire if he was gay. Mr. Fowler responded that he was not comfortable discussing that topic because he did not really know McCarthy well. Despite his clear discomfort with being interrogated about his sexuality, McCarthy persisted and continued questioning Mr. Fowler about his sexual preferences.

93.     Throughout Mr. Fowler's course of employment, McCarthy routinely referred to Mr. Fowler by derogatory terms, including but not limited to: "**FAGGOT**", "**BLACK GAY**", "**BLACK FAGGOT**", and "**SISSY**". McCarthy also told Mr. Fowler: "**NIGGA I WILL FUCK YOU UP**".

94.     In or around December 2017, McCarthy looked up Mr. Fowler's social media (Facebook) account, where she discovered that Mr. Fowler had been in a relationship with another man. Mr. Fowler was intentionally not friends with others at work because he wanted to keep his personal life private, especially in light of the questions already being asked, but McCarthy took it upon herself to tell not only investigate Mr. Fowler but to take the harassment further, publicly outing him at work and commenting on his prior relationships to all of his colleagues. Mr. Fowler was humiliated by her actions, becoming only more fearful that she would further escalate.

95.     Following McCarthy's "gossiping" about Mr. Fowler's sexual preferences and relationship with another man, other employees at Taco Bell began harassing Mr. Fowler and called him many derogatory terms for homosexuals. Ms.

McCarthy's actions and Defendant Taco Bell's inactions made it clear that bigotry and misconduct was condoned if not   outright encouraged by Defendant Taco Bell's management team.

96.     Despite his complaints, Defendant failed to timely investigate and correct the unlawful conduct and comments. As a result, the hostility only worsened.

97.     On or around June 15, 2018, while Mr. Fowler was at work, Mr. Fowler's coworker, True (last name unknown), stuck her hands down Mr. Fowler's pants and grabbed his penis. Mr. Fowler pulled away and immediately told Christine who responded: "**It's what [True] does, now get back inside and do your job, or do you want to be fired and live on the streets... HOMELESS MEN LOVE GAY BLACK MEN**!" Mr. Fowler did as he was instructed and went back to work as he was in fear of losing his job.

98.     A few hours later, Christine asked Mr. Fowler to come over to her, which he did. McCarthy proceeded to grab Mr. Fowler's hands and put them on her person as she stated: "If Jannel knows any of this, I will tell her that you touched me as well."

99.     Emboldened by her new promotion, McCarthy told Mr. Fowler to come speak to her in her office. McCarthy then threatened Mr. Fowler, insisting that he needs to stop going over her head and to instead, talk to her about any issues. Further, McCarthy admitted she had in fact been acting in an unlawful manner towards Mr. Fowler. She proceeded to justify her conduct, stating that she "**treats [Mr. Fowler] like shit because [Mr. Fowler] is insubordinate, which is what gives her the right**

to call [Mr. Fowler] a 'BLACK FAGGOT' and say things such as 'NIGGA I WILL
FUCK YOU UP.'"

100.   McCarthy followed her threats by asking Mr. Fowler whether he likes to
be called a "**BLACK FAGGOT**", to which Mr. Fowler responded, "absolutely not".
McCarthy then called Mr. Fowler a "**BLACK FAGGOT**" once again, and told Mr.
Fowler that because she is black, she can call him "**NIGGA**" and "**NIGGER**" as she
pleases. She closed the conversation by threating Mr. Fowler: "**BLACK FAGGOT, I
WILL HANG YOU LIKE THEY DID US**" (referring to the historical lynching of
African Americans).

101.   On another occasion, one of the co-workers who pushed Mr. Fowler
against the wall asked Mr. Fowler to cover for him while that co-worker went to
purchase drugs. Mr. Fowler told the co-worker that he should not be doing drugs at
work, to which the co-worker responded: "**DO WHAT I SAY NIGGER OR I'LL
MAKE SURE JENN [referring to McCarthy] KNOWS ABOUT THIS AND YOU
KNOW WHAT WILL HAPPEN IF I TELL HER.**" Throughout that night the co-
worker repeatedly called Mr. Fowler derogatory terms including, but not limited to:
"**NIGGER**", "**NIGGA**", and "**FAGGOT**".

102.   The Plaintiff Mr. Fowler was subject to unwelcome, offensive, and
harassing discriminatory conduct during his employment with the Defendant Taco
Bell and this conduct was directed to and perpetuated upon the Plaintiff because of his
sex/gender, race/national origin, in addition to his sexual orientation.

103.    As a result, the Defendant Taco Bell subjected and permitted its employees to expose the Plaintiff to discrimination and unlawful discharge.

104.    The Defendant Taco Bell was notified about and was otherwise aware of the discriminatory conduct and policies directed at the Plaintiff by the Defendant Taco Bell's employees and failed to take appropriate corrective action.

105.    The Defendant Taco Bell violated the Title VII by unlawfully discharging and discriminating against the Plaintiff based his sex/gender, race/national origin, in addition to his sexual orientation, of which the Defendant Taco Bell was fully aware.

106.    As a direct and proximate result of the Defendant Taco Bell's intentional discriminatory conduct in violation of Title VII, the Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. The Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  The Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

107.    The Defendant Taco Bell's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

108.    The conduct of the Defendant Taco Bell and/or its agents deprived the Plaintiff of his statutory rights guaranteed under Title VII.

109.    The Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT THREE
### *Cause of Action for Retaliation Under Title VII*
### *(As to Defendant Taco Bell Only)*

110.    Plaintiff reincorporates the allegations in the previous paragraphs 21-67.

111.    Title VII prohibits retaliation against an employee for opposing conduct which would violate the terms of Title VII.

112.    The Plaintiff opposed the Defendant Taco Bell's discriminatory conduct prohibited under Title VII when he complained to the Defendant Taco Bell about the discrimination and hostile work environment that he was subjected to as described and set forth above.

113.    The Plaintiff's complaints about the Defendant Taco Bell's unlawful and discriminatory actions, therefore, constituted protected activity under Title VII.

114.    During Mr. Fowler's first week of employment, while he was still training, McCarthy pulled Mr. Fowler aside to inquire if he was gay. Mr. Fowler responded that he was not comfortable discussing that topic because he did not really know McCarthy well. Despite his clear discomfort with being interrogated about his sexuality, McCarthy persisted and continued questioning Mr. Fowler about his sexual preferences.

115.    The day after McCarthy began to make unlawful and unwanted comments to Mr. Fowler, Mr. Fowler received a call from the Defendant's General

Manager, CHRISTINE (last name unknown by Plaintiff, referred to as "Ms. Kirk" by the Defendant, hereinafter referred to as "Christine").

116.   Christine began the phone call by referring to Mr. Fowler as "Zachariah", Mr. Fowler corrected her by politely stating that he prefers to be called "Zach". To his surprise, Christine responded by saying that she likes Zach better because that was the name of her "**BLACK EX WHO HAD A BIG DICK**". Despite his concerns regarding her professionalism, Mr. Fowler complained to Christine of McCarthy's unlawful and discriminatory conduct and comments about his sexuality and race. Christine claimed that she would handle it and apologized, but Christine never handled it.

117.   Rather than indicate her dismay or efforts to quell the harassment, Christine proceeded to ask Mr. Fowler if he was gay. Again, Mr. Fowler responded that he did not feel comfortable discussing that topic and insisted that his sexuality was not the point. Rather, she should be focused on ending the harassment.

118.   Despite his complaints, Defendant failed to timely investigate and correct the unlawful conduct and comments. As a result, the hostility only worsened.

119.   In or around February 2018, Mr. Fowler tried again to formalize a complaint with Christine. Mr. Fowler openly cried as he told Christine about McCarthy's conduct and how the other employees are reacting by harassing and discriminating against him. Instead of handling the situation appropriately, Christine told Mr. Fowler that he would "have to deal with it or he could quit."

120.    Despite the unrelenting nature of the harassment and the clear toll it was taking on Mr. Fowler, Defendant Taco bell failed to investigate, failed to take corrective action and left Mr. Fowler to fend for himself.

121.    As it was clear Christine had no intent to prevent the ongoing harassment from continuing to escalate, Mr. Fowler sought out and complained to Ms. Figueroa about the inappropriate and unlawful conduct taking place.

122.    Mr. Fowler explained the steps he had taken to prevent the ongoing harassment and related escalation by his colleagues to which Figueroa responded: "I can't believe what you are saying and if what you are saying is true, then all parties involved will be fired on the spot."

123.    Thereafter, Figueroa and McCarthy went into the office and remained in the office for approximately two hours. Mr. Fowler finally felt he had an ally and was hopeful he would be able to continue to work without the unrelenting pressure of harassment by his supervisor.

124.    When they finally emerged, Mr. Fowler's presence was requested in the office. Rather than addressing the unlawful and discriminatory conduct, Figueroa told Mr. Fowler that since there was no physical proof of the allegations, none of Mr. Fowler's allegations could be true. Mr. Fowler then asked Figueroa to check the cameras, but Figueroa claimed that the cameras did not work.

125.    Defendant Taco Bell refused to take any active steps to investigate the ongoing harassment and failed to take corrective action.

126.   In fact, Defendant Taco Bell took steps demonstrating their continued efforts to condone the illegal conduct and comments. Shortly after the above-mentioned discussion with Figueroa, McCarthy was promoted.

127.   In or around February 2018, Mr. Fowler finished his responsibilities for the day and asked McCarthy if he could go outside to get some air and take a breath. McCarthy responded, "**HELL KNOW I WANT YOU TO CLOCK OUT AND GO HOME, I DON'T WANT ANY FAGGOT AROUND ME WITH NOTHING TO DO**." Mr. Fowler explained that his work was done and asked McCarthy if he could clock out. McCarthy then yelled at Mr. Fowler "**NO I DON'T WANT YOU TO CLOCK OUT AND GO HOME. DO WHAT I SAY, OR I WILL WRITE YOU UP FOR BEING INSUBORDINATE!**"

128.   Mr. Fowler received conflicting messages from McCarthy but had finished his work for the day, so he clocked out and went home. On his way home, Mr. Fowler received a text message from McCarthy telling Mr. Fowler not to return to work, per the instruction of Figueroa. Mr. Fowler tried several times to contact Figueroa, but she never answered or responded.

129.   In or around February 2020, Defendants unlawfully terminated Mr. Fowler because of his race, color and sexual orientation. Defendants further unlawfully terminated Mr. fowler because of his ongoing complaints and opposition to the unlawful conduct by Defendants.

130.   At all times relevant, the Plaintiff acted in good faith and with the objective and subjective belief that the Defendant Taco Bell's employees violated the law and his protected rights.

131.   After expressing his opposition to the unlawful discriminatory conduct, the Defendant Taco Bell retaliated against the Plaintiff by among other things, wrongfully and unlawfully terminating the Plaintiff's employment.

132.   The adverse employment actions by the Defendant Taco Bell were the result of the Plaintiff's opposition to the discriminatory conduct to which he was subjected, in violation of Title VII.

133.   The Defendant Taco Bell's alleged bases for its adverse employment actions against the Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of the Defendant Taco Bell's conduct.

134.   The Defendant Taco Bell's employees unlawfully retaliated against the Plaintiff because he opposed a practice made unlawful by Title VII. The Defendant Taco Bell would not have terminated Plaintiff but for his opposition.

135.   As a result of the Defendant Taco Bell's retaliatory conduct in violation of Title VII, the Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. The Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.   The Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

136.  The Defendant Taco Bell's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff's rights under Title VII. Accordingly, the Plaintiff also requests punitive damages as authorized by Title VII.

137.  The Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT FOUR
### Race Discrimination (Discrete Act/Unlawful Termination) in Violation of § 1981 (As to All Defendants)

138.  Plaintiff reincorporates the allegations in the previous paragraphs 21-67.

139.  This is an action for discrimination and harassment because of the Plaintiff's race in violation of Section 1981. 42 U.S.C. §1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. §1981.

140.  The Plaintiff, as a member of the African American race, was discriminated against by the Defendants because of his race, as provided under 42 U.S.C. §1981 and has suffered damages as set forth herein.

141.    The Defendants constantly enforced a purposefully discriminatory pattern and practice of denying African American employees of the equal rights described therein, in further violation of 42 U.S.C. §1981.

142.    The Plaintiff is an African American man and is protected under Section 1981.

143.    At all times relevant, the Plaintiff was treated differently because of his race.

144.    During Mr. Fowler's first week of employment, while he was still training, McCarthy pulled Mr. Fowler aside to inquire if he was gay. Mr. Fowler responded that he was not comfortable discussing that topic because he did not really know McCarthy well. Despite his clear discomfort with being interrogated about his sexuality, McCarthy persisted and continued questioning Mr. Fowler about his sexual preferences.

145.    In or around early 2018 the Defendant Taco Bell attempted to dissuade Mr. Fowler and promised Mr. Fowler a full-time position and a raise, so he resigned from his second job in reliance on that promise.

146.    Mr. Fowler never received the raise of full-time employment, and as a result of his diminished earning capacity he became homeless. McCarthy convinced Mr. Fowler to stay at her house and took the last of his remaining money for a deposit. Mr. Fowler reluctantly agreed as he believed he had no other alternative.

147.    On or around June 15, 2018, while Mr. Fowler was at work, Mr. Fowler's coworker, True (last name unknown), stuck her hands down Mr. Fowler's

pants and grabbed his penis. Mr. Fowler pulled away and immediately told Christine who responded: "**It's what [True] does, now get back inside and do your job, or do you want to be fired and live on the streets... HOMELESS MEN LOVE GAY BLACK MEN**!" Mr. Fowler did as he was instructed and went back to work as he was in fear of losing his job.

148.    A few hours later, Christine asked Mr. Fowler to come over to her, which he did. McCarthy proceeded to grab Mr. Fowler's hands and put them on her person as she stated: "If Jannel knows any of this, I will tell her that you touched me as well."

149.    In or around February 2018, Mr. Fowler finished his responsibilities for the day and asked McCarthy if he could go outside to get some air and take a breath. McCarthy responded, "**HELL KNOW I WANT YOU TO CLOCK OUT AND GO HOME, I DON'T WANT ANY FAGGOT AROUND ME WITH NOTHING TO DO**." Mr. Fowler explained that his work was done and asked McCarthy if he could clock out. McCarthy then yelled at Mr. Fowler "**NO I DON'T WANT YOU TO CLOCK OUT AND GO HOME. DO WHAT I SAY, OR I WILL WRITE YOU UP FOR BEING INSUBORDINATE!**"

150.    Mr. Fowler received conflicting messages from McCarthy but had finished his work for the day, so he clocked out and went home. On his way home, Mr. Fowler received a text message from McCarthy telling Mr. Fowler not to return to work, per the instruction of Figueroa. Mr. Fowler tried several times to contact Figueroa, but she never answered or responded.

151.    In or around February 2020, Defendants unlawfully terminated Mr. Fowler because of his race, color and sexual orientation. Defendants further unlawfully terminated Mr. fowler because of his ongoing complaints and opposition to the unlawful conduct by Defendants.

152.    The Defendants unlawfully and wrongfully terminated the Plaintiff because of his race.

153.    As a result of the Defendant's discrimination in violation of Section 1981, the Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of the Plaintiff's contractual relationship, which provided substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of the Defendants' actions, thereby entitling the Plaintiff to compensatory damages.

154.    As alleged above, the Defendants acted with malice or reckless indifference to the rights of the Plaintiff and copious other individuals named herein, thereby entitling the Plaintiff to an award of punitive damages.

155.    The Defendants committed the violations mentioned above and the Plaintiff has suffered numerous damages as a result.

156.    The Plaintiff makes a claim against the Defendants under all of the applicable paragraphs of 42 U.S.C. §1981.

157.   The Plaintiff claims the Defendants both unlawfully discriminated against the Plaintiff and unlawfully retaliated against the Plaintiff in violation of 42 U.S.C. §1981.

## COUNT FIVE

*Race Discrimination (Hostile Work Environment) in Violation of § 1981*
*(As to All Defendants)*

158.   Plaintiff reincorporates the allegations in the previous paragraphs 21-67.

159.   This is an action for discrimination and harassment because of the Plaintiff's race in violation of Section 1981. 42 U.S.C. §1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

160.   Here, the Defendants' conduct occurred because of the Plaintiff's legally protected characteristic; and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

161.   The harassing conduct was directly connected to the Plaintiff's race.

162.   The Defendants' employees regularly harassed the Plaintiff because of his race and his complaints of discrimination.

163.   During Mr. Fowler's first week of employment, while he was still training, McCarthy pulled Mr. Fowler aside to inquire if he was gay. Mr. Fowler responded that he was not comfortable discussing that topic because he did not really know McCarthy well. Despite his clear discomfort with being interrogated about his sexuality, McCarthy persisted and continued questioning Mr. Fowler about his sexual preferences.

164.   Throughout Mr. Fowler's course of employment, McCarthy routinely referred to Mr. Fowler by derogatory terms, including but not limited to: "**FAGGOT**", "**BLACK GAY**", "**BLACK FAGGOT**", and "**SISSY**". McCarthy also told Mr. Fowler: "**NIGGA I WILL FUCK YOU UP**".

165.   In or around December 2017, McCarthy looked up Mr. Fowler's social media (Facebook) account, where she discovered that Mr. Fowler had been in a relationship with another man. Mr. Fowler was intentionally not friends with others at work because he wanted to keep his personal life private, especially in light of the questions already being asked, but McCarthy took it upon herself to tell not only investigate Mr. Fowler but to take the harassment further, publicly outing him at work and commenting on his prior relationships to all of his colleagues. Mr. Fowler was humiliated by her actions, becoming only more fearful that she would further escalate.

166. Following McCarthy's "gossiping" about Mr. Fowler's sexual preferences and relationship with another man, other employees at Taco Bell began harassing Mr. Fowler and called him many derogatory terms for homosexuals. Ms.

McCarthy's actions and Defendant Taco Bell's inactions made it clear that bigotry and misconduct was condoned if not   outright encouraged by Defendant Taco Bell's management team.

167.   Despite his complaints, Defendant failed to timely investigate and correct the unlawful conduct and comments. As a result, the hostility only worsened.

168.   On or around June 15, 2018, while Mr. Fowler was at work, Mr. Fowler's coworker, True (last name unknown), stuck her hands down Mr. Fowler's pants and grabbed his penis. Mr. Fowler pulled away and immediately told Christine who responded: "**It's what [True] does, now get back inside and do your job, or do you want to be fired and live on the streets… HOMELESS MEN LOVE GAY BLACK MEN**!" Mr. Fowler did as he was instructed and went back to work as he was in fear of losing his job.

169.   A few hours later, Christine asked Mr. Fowler to come over to her, which he did. McCarthy proceeded to grab Mr. Fowler's hands and put them on her person as she stated: "If Jannel knows any of this, I will tell her that you touched me as well."

170.   Emboldened by her new promotion, McCarthy told Mr. Fowler to come speak to her in her office. McCarthy then threatened Mr. Fowler, insisting that he needs to stop going over her head and to instead, talk to her about any issues. Further, McCarthy admitted she had in fact been acting in an unlawful manner towards Mr. Fowler. She proceeded to justify her conduct, stating that she "**treats [Mr. Fowler] like shit because [Mr. Fowler] is insubordinate, which is what gives her the right**

to call [Mr. Fowler] a 'BLACK FAGGOT' and say things such as 'NIGGA I WILL FUCK YOU UP.'"

171.  McCarthy followed her threats by asking Mr. Fowler whether he likes to be called a "**BLACK FAGGOT**", to which Mr. Fowler responded, "absolutely not". McCarthy then called Mr. Fowler a "**BLACK FAGGOT**" once again, and told Mr. Fowler that because she is black, she can call him "**NIGGA**" and "**NIGGER**" as she pleases. She closed the conversation by threating Mr. Fowler: "**BLACK FAGGOT, I WILL HANG YOU LIKE THEY DID US**" (referring to the historical lynching of African Americans).

172.  On another occasion, one of the co-workers who pushed Mr. Fowler against the wall asked Mr. Fowler to cover for him while that co-worker went to purchase drugs. Mr. Fowler told the co-worker that he should not be doing drugs at work, to which the co-worker responded: "**DO WHAT I SAY NIGGER OR I'LL MAKE SURE JENN [referring to McCarthy] KNOWS ABOUT THIS AND YOU KNOW WHAT WILL HAPPEN IF I TELL HER.**" Throughout that night the co-worker repeatedly called Mr. Fowler derogatory terms including, but not limited to: "**NIGGER**", "**NIGGA**", and "**FAGGOT**".

173.  The Defendants' employees regularly made discriminatory comments about the Plaintiff on account of his race.

174.  The Defendants' discriminatory conduct was not welcomed by the Plaintiff.

175.    As a result of the hostile work environment, the Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

176.    The Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for the Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

177.    As a result of the Defendants' violations of § 1981, the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

### COUNT SIX
*Cause of Action for Retaliation in Violation of § 1981*
*(As to All Defendants)*

178.    Plaintiff reincorporates the allegations in the previous paragraphs 21-67.

179.    Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

180.    During Mr. Fowler's first week of employment, while he was still training, McCarthy pulled Mr. Fowler aside to inquire if he was gay. Mr. Fowler

responded that he was not comfortable discussing that topic because he did not really know McCarthy well. Despite his clear discomfort with being interrogated about his sexuality, McCarthy persisted and continued questioning Mr. Fowler about his sexual preferences.

181.    The day after McCarthy began to make unlawful and unwanted comments to Mr. Fowler, Mr. Fowler received a call from the Defendant's General Manager, CHRISTINE (last name unknown by Plaintiff, referred to as "Ms. Kirk" by the Defendant, hereinafter referred to as "Christine").

182.    Christine began the phone call by referring to Mr. Fowler as "Zachariah", Mr. Fowler corrected her by politely stating that he prefers to be called "Zach". To his surprise, Christine responded by saying that she likes Zach better because that was the name of her "**BLACK EX WHO HAD A BIG DICK**". Despite his concerns regarding her professionalism, Mr. Fowler complained to Christine of McCarthy's unlawful and discriminatory conduct and comments about his sexuality and race. Christine claimed that she would handle it and apologized, but Christine never handled it.

183.    Rather than indicate her dismay or efforts to quell the harassment, Christine proceeded to ask Mr. Fowler if he was gay. Again, Mr. Fowler responded that he did not feel comfortable discussing that topic and insisted that his sexuality was not the point. Rather, she should be focused on ending the harassment.

184.    Despite his complaints, Defendant failed to timely investigate and correct the unlawful conduct and comments. As a result, the hostility only worsened.

185.    In or around February 2018, Mr. Fowler tried again to formalize a complaint with Christine. Mr. Fowler openly cried as he told Christine about McCarthy's conduct and how the other employees are reacting by harassing and discriminating against him. Instead of handling the situation appropriately, Christine told Mr. Fowler that he would "have to deal with it or he could quit."

186.    Despite the unrelenting nature of the harassment and the clear toll it was taking on Mr. Fowler, Defendant Taco bell failed to investigate, failed to take corrective action and left Mr. Fowler to fend for himself.

187.    As it was clear Christine had no intent to prevent the ongoing harassment from continuing to escalate, Mr. Fowler sought out and complained to Ms. Figueroa about the inappropriate and unlawful conduct taking place.

188.    Mr. Fowler explained the steps he had taken to prevent the ongoing harassment and related escalation by his colleagues to which Figueroa responded: "I can't believe what you are saying and if what you are saying is true, then all parties involved will be fired on the spot."

189.    Thereafter, Figueroa and McCarthy went into the office and remained in the office for approximately two hours. Mr. Fowler finally felt he had an ally and was hopeful he would be able to continue to work without the unrelenting pressure of harassment by his supervisor.

190.    When they finally emerged, Mr. Fowler's presence was requested in the office. Rather than addressing the unlawful and discriminatory conduct, Figueroa told Mr. Fowler that since there was no physical proof of the allegations, none of Mr.

Fowler's allegations could be true. Mr. Fowler then asked Figueroa to check the cameras, but Figueroa claimed that the cameras did not work.

191. Defendant Taco Bell refused to take any active steps to investigate the ongoing harassment and failed to take corrective action.

192. In fact, Defendant Taco Bell took steps demonstrating their continued efforts to condone the illegal conduct and comments. Shortly after the above-mentioned discussion with Figueroa, McCarthy was promoted.

193. In or around February 2018, Mr. Fowler finished his responsibilities for the day and asked McCarthy if he could go outside to get some air and take a breath. McCarthy responded, "**HELL KNOW I WANT YOU TO CLOCK OUT AND GO HOME, I DON'T WANT ANY FAGGOT AROUND ME WITH NOTHING TO DO**." Mr. Fowler explained that his work was done and asked McCarthy if he could clock out. McCarthy then yelled at Mr. Fowler "**NO I DON'T WANT YOU TO CLOCK OUT AND GO HOME. DO WHAT I SAY, OR I WILL WRITE YOU UP FOR BEING INSUBORDINATE!**"

194. Mr. Fowler received conflicting messages from McCarthy but had finished his work for the day, so he clocked out and went home. On his way home, Mr. Fowler received a text message from McCarthy telling Mr. Fowler not to return to work, per the instruction of Figueroa. Mr. Fowler tried several times to contact Figueroa, but she never answered or responded.

195.   In or around February 2020, Defendants unlawfully terminated Mr. Fowler because of his race, color and sexual orientation. Defendants further unlawfully terminated Mr. fowler because of his ongoing complaints and opposition to the unlawful conduct by Defendants.

196.

197.   This is an action for retaliation by Defendants against Plaintiff in violation of Section 1981.

198.   The Defendants discriminated against and subjected the Plaintiff to hostile work environment because his race.

199.   The Plaintiff complained about the discriminatory treatments he received based on his race.

200.   The retaliatory actions taken against the Plaintiff would deter a reasonable person from making or maintaining a complaint of discrimination and/or harassment against the Defendants.

201.   The Plaintiff has been damaged as a direct and proximate result of the Defendants' illegal employment practices, including suffering economic damages, compensatory damages, emotional pain and suffering, inconvenience, mental anguish, outrage, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries.

## DEMAND FOR JURY DEMAND

The Plaintiff requests a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully requests this Court enter judgment against the Defendants for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendants' conduct in violation of both Title VII and 42 U.S.C. §1981.

Dated:  Miami, Florida
        June 10, 2021

                                 **DEREK SMITH LAW GROUP, PLLC**

                                 Caroline H. Miller, Esq.
                                 701 Brickell Ave, Suite 1310
                                 Miami, FL 33131
                                 Tel: (305) 946-1884
                                 Fax: (305) 503-6741
                                 Caroline@dereksmithlaw.com

                                 *Counsel for Plaintiff*